IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-00703-NYW-STV

KHANH PHAM,

    Plaintiff/Counterclaim Defendant,

v.

AEVA SPECIALTY PHARMACY,

    Defendant/Counterclaim Plaintiff.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter is before the Court on Aeva Specialty Pharmacy's Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment"). [Doc. 40]. Upon review of the Motion and the associated briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons set forth below, the Motion for Summary Judgment is respectfully **DENIED**.

**BACKGROUND**

Plaintiff Khanh Pham ("Plaintiff" or "Mr. Pham") alleges that in 2020, he applied for an open pharmacist employment position at Aeva Specialty Pharmacy ("Defendant" or "Aeva"), and received a conditional offer of employment. [Doc. 1 at ¶¶ 6–7]. According to Plaintiff, Aeva submitted Plaintiff's information to Clear Screening Technologies LLC ("Clear Screening"), a former defendant in this case, for a routine background check. [*Id.* at ¶ 8]. Mr. Pham asserts that the background screening report erroneously reported that he had been charged with a federal crime in 2018, though he had never been charged with a federal crime. [*Id.* at ¶¶ 10–11]. He also

alleges that as a result of the incorrect Clear Screening report, Aeva revoked its conditional offer of employment.  [*Id.* at ¶ 12].

Mr. Pham initiated this civil action on March 9, 2021, raising three claims under the Fair Credit Reporting Act ("FCRA"): two claims against Clear Screening for negligent and willful violations, respectively, of the FCRA, and one claim against Aeva for willful violations of the FCRA.  [*Id.* at 4–5].  Aeva answered the Complaint on April 30, 2021, raising two counterclaims against Mr. Pham: (1) a "claim for frivolous lawsuit," and (2) a claim for "prevailing party fees." [Doc. 15 at 9–10].[1]  Mr. Pham voluntarily dismissed his claims against Clear Screening with prejudice on August 5, 2021.  *See* [Doc. 28; Doc. 29].

Aeva filed the instant Motion for Summary Judgment on February 10, 2022, seeking judgment in its favor on Plaintiff's FCRA claim.  *See* [Doc. 40].  Aeva's Motion addresses only Plaintiff's claim against Aeva and does not seek any relief with respect to Aeva's counterclaims. *See* [*id.* at 4 ("Plaintiff's claim[] against Aeva [is] the subject of the instant motion for summary judgment.")].  This Court's analysis here is limited accordingly.

## UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and are undisputed unless otherwise noted.

---

[1] The Court does not pass on the procedural viability of Defendant's standalone claim for attorney's fees, but notes that "a request for attorney fees is generally a request for a type of relief, not a standalone claim." *McLaren Health Care Corp. v. Gartner, Inc.*, No. 2:21-cv-12598-TGB-CI, 2022 WL 16039716, at *8 (E.D. Mich. Sept. 30, 2022).

2

1.     Mr. Pham is a licensed pharmacist.[2]  [Doc. 40 at ¶ 1; Doc. 41 at ¶ 1; Doc. 41-2 at 38:14].[3]

2.     In 2020, Mr. Pham applied for employment as a pharmacist with Aeva.  [Doc. 40 at ¶ 2; Doc. 41 at ¶ 2; Doc. 41-2 at 46:3–6].

3.     Prior to interviewing with Aeva, Mr. Pham worked for CVS Pharmacy.  Mr. Pham's employment with CVS ended in September 2019.  [Doc. 40 at ¶ 3; Doc. 41 at ¶ 3; Doc. 40-3 at 39:11–17].[4]

4.     Mr. Pham "interacted with" Brooke Pendergrass, Aeva's Manager of Human Resources, during the process of interviewing with Aeva.  [Doc. 40 at ¶ 4; Doc. 41 at ¶ 4; Doc. 40-2 at 27:1–6].[5]

---

[2] Defendant cites no evidence in support of this assertion, as required by the Federal Rules.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.").  Although it is not the Court's duty to search through the evidence to find support for a party's assertions that the party has not itself supported, *Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir.2003), the Court notes that other record evidence supports the assertion that Mr. Pham is a licensed pharmacist.  *See* [Doc. 41-2 at 38:14].

[3] When citing a transcript, the Court cites the document number generated by the Electronic Case Filing ("ECF") system, but the page and line numbers generated by the transcript.

[4] Defendant asserts that Mr. Pham was "terminated" from his employment with CVS, which Mr. Pham does not dispute.  *See* [Doc. 40 at ¶ 3; Doc. 41 at ¶ 3].  However, Defendant does not cite to any record evidence demonstrating that Mr. Pham was terminated from his employment with CVS; rather, the deposition transcript cited by Defendant indicates that Mr. Pham "left CVS" in September 2019.  [Doc. 40-3 at 39:16].

[5] The Parties dispute whether Aeva's CEO, Barbara Deinet, interviewed Mr. Pham, as well.  *See* [Doc. 40 at ¶ 4; Doc. 41 at ¶ 4; Doc. 40-2 at 28:6–15; Doc. 41-2 at 17:15–21].  This dispute is not material for purposes of the pending Motion.

5. After Mr. Pham's interview with Aeva, Ms. Pendergrass presented Mr. Pham with a verbal conditional offer of employment. [Doc. 41 at ¶ 5; Doc. 42 at 1; Doc. 41-2 at 15:14–16; Doc. 41-3 at 32:14–19].[6]

6. Mr. Pham did not receive a written offer of employment from Aeva. [Doc. 40 at ¶ 6; Doc. 41 at ¶ 6; Doc. 40-3 at 82:4–6].[7]

7. At some point after Mr. Pham submitted to a background check, Aeva decided not to hire Mr. Pham. [Doc. 40 at 5; Doc. 41 at ¶ 7; Doc. 40-2 at 81:11–15].[8]

---

[6] Aeva asserts that "[s]hortly after her interview with Mr. Pham, Ms. Pendergrass indicated that Mr. Pham was eligible to be hired as a pharmacist for Aeva subject to satisfaction of several pre-employment requirements including verification of pre-employment, [a] background check, results of a drug test, and [a] final signoff by Ms. Deinet." [Doc. 40 at ¶ 5]. Aeva fails to support this assertion with any citation to record evidence, as required by the Federal Rules. Moreover, Mr. Pham disputes that Ms. Pendergrass conditioned the offer of employment on a verification of pre-employment or a final signoff by Ms. Deinet, *see* [Doc. 41 at ¶ 5], citing record evidence in support. *See* [Doc. 41-2 at 26:15–18, 27:6–8].

[7] Aeva asserts that "[s]uccessful completion of multiple pre-employment requirements is necessary before an offer of employment is extended by Aeva Pharmacy." [Doc. 40 at ¶ 6]. While the deposition testimony cited by Aeva does not support this statement, *see* [Doc. 40-1 at 15:1–25], other pages in Ms. Deinet's deposition transcript show that she testified that candidates must complete drug screenings, background checks, and pre-employment checks. [*Id.* at 18:12–21]. But Ms. Deinet did not testify that completion of these requirements "is necessary before an offer of employment is extended by Aeva Pharmancy," as Defendant suggests. [Doc. 40 at ¶ 6]. Rather, Ms. Deinet stated that while she is not involved in the process of extending conditional employment offers, Ms. Pendergrass has "latitude" and can "use her own judgment" to offer conditional offers of employment. [Doc. 40-1 at 18:22–19:25].

[8] The Parties dispute the reasoning behind Aeva's decision not to hire Plaintiff. Defendant states that it was due to "inconsistencies by Plaintiff . . . regarding his prior separation/termination from CVS and timelines regarding his past employment" and that the hiring decision was "[b]ased exclusively on Mr. Pham's dishonesty, lack of integrity and failure to be transparent during the employment process." [Doc. 40 at 5; Doc. 40-1 at 57:24–58:4]. Plaintiff has submitted evidence that Ms. Pendergrass told Plaintiff that Aeva was withdrawing its conditional offer of employment due to the contents of Mr. Pham's background check. [Doc. 41 at ¶ 7; Doc. 41-2 at 15:2–9, 54:9–12; 73:2–9]. Accordingly, the Court deems this fact disputed for purposes of the instant Motion.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009). In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147,

1165 (10th Cir. 2008). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler*, 144 F.3d at 670.

## ANALYSIS

The Fair Credit Reporting Act was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The FCRA "enables consumers to protect their reputations, and to protect themselves against the dissemination of false or misleading credit information." *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1245 (10th Cir. 1999) (citations omitted). "The FCRA places distinct obligations on three types of entities: (1) consumer reporting agencies; (2) users of consumer reports; and (3) furnishers of information." *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002).

Under the FCRA, users of consumer reports—like Aeva—must, "in using a consumer report for employment purposes," and "before taking any adverse action based in whole or in part on the report, . . . provide to the consumer to whom the report relates (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter." 15 U.S.C. § 1681b(3)(A). "Congress intended applicants to have a real opportunity to contest an adverse employment decision based on a consumer report," and an applicant "must have enough time between the notice and the final decision to meaningfully contest or explain the contents of the report." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 634 (D. Or. 2015) (quotation and citation omitted).

6

I.      **The Applicability of the FCRA**

In its Motion for Summary Judgment, Aeva first argues that the FCRA is not applicable to this case because its decision to not hire Plaintiff was unrelated to and did not rely upon Plaintiff's background check. [Doc. 40 at 7]. Aeva states that it is undisputed that "at no time was Mr. Pham told he was not hired based on [the background report's] improper red flag regarding a felony criminal case on an interim background check." [*Id.* at 9]. Instead, Aeva asserts, Mr. Pham testified that he has "no evidence" that Aeva made its hiring decision based on the background report. [*Id.*]. Aeva supports its position by citing evidence to Ms. Deinet's deposition testimony, wherein Ms. Deinet testified that the decision to not hire Plaintiff was unrelated to the background report and that Ms. Deinet, "who made the hiring decision," never saw the background report until this lawsuit was filed. [*Id.*]; *see also* [Doc. 40-1 at 97:1–7, 14–18; Doc. 40-2 at 80:5–11].

But Mr. Pham *has* submitted evidence, in the form of his own testimony, that Ms. Pendergrass called him to revoke his conditional offer of employment and informed him at the time that the revocation was based on the background check results. *See* [Doc. 41-2 at 15:17–23, 94:11–18, 96:1–12].[9] While Defendant implicitly asks the Court to accept its employees' testimony as true and to discredit Plaintiff's testimony as untrue, the Court cannot make credibility determinations in ruling on a motion for summary judgment. *See Anderson*, 477 U.S. at 255; *see also Rodeman v. Foster*, 767 F. Supp. 2d 1176, 1182 (D. Colo. 2011) ("A jury may well find plaintiff's story unbelievable, but in assessing defendants' motion for summary judgment, the

---

[9] Defendant does not argue that the revocation of a conditional offer of employment is not an "adverse action" as contemplated by the FCRA, *see* [Doc. 40], and the Court concludes it is. *See* 15 U.S.C. § 1681a(k)(1)(B)(ii) (defining "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee"); *Cox v. TeleTech@Home, Inc.*, No. 1:14-cv-00993, 2015 WL 500593, at *4 (N.D. Ohio Feb. 5, 2015) ("An adverse action occurs when an employer revokes a conditional offer of employment to a prospective employee.").

Court 'may not make credibility determinations or weigh the evidence.'") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

The fact that Mr. Pham testified that he has "no evidence" that the hiring decision was based on his background check does not change the Court's conclusion. Mr. Pham, a non-lawyer, simply could have meant that he has no tangible evidence of the reasoning for the decision, i.e., a recording of the telephone call with Ms. Pendergrass. But Mr. Pham's testimony is evidence, and the Court must draw all reasonable inferences from that evidence in Mr. Pham's favor. *Adler*, 144 F.3d at 670.[10] Because a reasonable jury could conclude, based on Mr. Pham's testimony, that Aeva's decision to not hire Mr. Pham was based on the results of the background check, genuine issues of material fact preclude summary judgment on this basis.[11]

---

[10] In its Reply, Defendant states that "Mr. Pham testified that he was never told that he was not hired based upon the report." [Doc. 42 at 8 (citing Doc. 40-3 at 73–74, 76–77)]. This assertion is not supported by the cited deposition testimony. Instead, Mr. Pham testified that Ms. Pendergrass told him that the decision to not hire him was based on the background report. [Doc. 42-1 at 73:5–9]. At best, Mr. Pham responded "[n]o" when asked whether Ms. Pendergrass "ever relay[ed] to [Plaintiff] and communicate[d] to [Plaintiff] that [Aeva] had deemed the information on the report deeming you ineffective as an employee [sic] and that that was the basis for their decision." [*Id.* at 76:21–77:1]. Even assuming that this answer conflicts with Mr. Pham's other testimony, conflicts in the evidence must be resolved by the jury. *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002).

[11] Defendant's argument that the "decision to deny employment to Plaintiff occurred . . . before the Initial or Complete Reports were received," [Doc. 40 at 7], does not change the Court's conclusion. First, Defendant cites no evidence in support of this assertion, as required by the Federal Rules, and Defendant's citation elsewhere in its Motion to page 53 of Ms. Deinet's deposition testimony does not support Defendant's assertion that Aeva made the hiring decision prior to receiving the report. *See* [Doc. 40-1 at 53:1–25]. Nor does Defendant explain what it means when it refers to the "Initial Report" or "Complete Report," or set out the dates on which Aeva apparently received either of these reports, so as to demonstrate that the decision to revoke the conditional offer occurred prior to receipt of any background reports. *See generally* [Doc. 40]. While Defendant does assert in its Reply that "[t]he evidence unequivocally shows that" it was impossible for Aeva to use the background check in its hiring decision because "the background report was not completed until August 18, 2020" and "the interim background check was not even received at the time of the hiring decision," citing to evidence in support, [Doc. 42 at 3], this argument and additional supporting information were available to Defendant at the time it filed its Motion, and its failure to meaningfully raise this argument with sufficient support in the Motion

## II. Actual Damages

In the alternative, Aeva argues that Plaintiff cannot establish that he was actually damaged by Aeva's actions, which necessitates summary judgment in its favor. [Doc. 40 at 10]. The FCRA establishes separate categories of damages for willful and negligent violations of the FCRA. A company that willfully fails to comply with FCRA requirements may be held liable for "any actual damages sustained by the consumer as a result of the failure <u>or</u> damages of not less than $100 and not more than $1,000," as well as punitive damages and attorney's fees and costs. 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Therefore, a "consumer need not prove actual damages if the [FCRA] violation is willful, but may recover punitive damages and statutory damages ranging from $100 to $1,000." *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011). Meanwhile, an employer who negligently fails to comply with the FCRA may be liable for "any actual damages sustained by the consumer as a result of the failure" and fees and costs. 15 U.S.C. § 1681o(a). Mr. Pham seeks "actual damages, statutory damages, costs, and attorney's fees," as well as punitive damages, pursuant to 15 U.S.C. § 1681n. [Doc. 1 at ¶ 42; *id.* at 6].

Aeva argues that Mr. Pham has failed to submit any evidence of actual damages suffered by him as a result of Aeva's purported FCRA violations. [Doc. 40 at 11].[12] In addition, it argues that because Mr. Pham "admitted" a lack of actual damages, this "mandate[es] dismissal of"

---

renders the argument waived. *White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017) (arguments raised for the first time in a reply are waived). And finally, even if the argument had properly been raised and supported with evidence, Defendant would have only further demonstrated that a genuine issue of material fact exists as to the reason for the revocation of the employment offer. It is not this Court's role to resolve disputes of fact. *Rodeman*, 767 F. Supp. 2d at 1182.

[12] Insofar as Defendant argues that Plaintiff was not damaged by Aeva's conduct because he "has no idea what the pre-adverse notice process is" or "if he is entitled to one," *see* [Doc. 40 at 11], Defendant does not explain why this is material to the issues raised in the Motion for Summary Judgment or why it indisputably demonstrates that Mr. Pham was not damaged by Aeva's actions. *See* [*id.*].

9

Plaintiff's claim. [*Id.* at 10]. In support of its argument, Aeva cites to deposition testimony wherein Mr. Pham was asked to explain "whether or not [he had] been harmed by Aeva Pharmacy and [whether he had] lost money." [Doc. 40-3 at 42:4–6]. Plaintiff responded, "No, I have not been harmed." [*Id.* at 42:7]. On this basis, Aeva asserts that "Plaintiff has failed to demonstrate that the alleged adverse credit action . . . caused any damages." [Doc. 40 at 11]. Aeva further asserts that Mr. Pham was hired by a different employer within 20 days of his interview with Aeva and that Plaintiff "received a settlement from the dismissed co-Defendant in this case of around $20,000," which "negate[s] any possible [FCRA] claim as Mr. Pham made more money [through the settlement] than he would have if he had been employed by Aeva." [*Id.* at 11–12].

Aeva's arguments are insufficient to warrant summary judgment in its favor. First, Aeva did not mention Mr. Pham's new employment or the settlement in its Statement of Undisputed Facts, *see* [Doc. 40 at ¶¶ 1–6], and thus, Mr. Pham was not required to rebut these assertions with record evidence. *See Vaughn v. Byrd*, No. CIV-14-0262-HE, 2016 WL 247585, at *4 n.12 (W.D. Okla. Jan. 20, 2016) (declining to consider assertions not raised in the movants' statement of undisputed facts, as the plaintiff "was not required to respond to them"). If Defendant intended to rely on these material assertions in arguing that it is entitled to judgment in its favor, it was required to include them in its Statement of Undisputed Facts. *See* Practice Standards (Civil Cases), Judge Daniel D. Domenico, § III.E.1.a ("[T]he movant shall set forth in simple, declarative sentences, separately numbered and paragraphed, <u>each</u> material fact that the movant believes is not in dispute and that supports the movant's claim that movant is entitled to judgment as a matter of law.")

(emphasis added).[13]  The Court thus cannot conclude that these assertions are undisputed for purposes of the pending Motion.

Second, Aeva has not cited any legal authority suggesting that a settlement with a former party to this lawsuit can "negate[]" any claim for damages asserted by Plaintiff as to Aeva.  *See generally* [Doc. 40].  Through its independent research, the Court could find no support for Defendant's position.  *But see Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (a court has no obligation to make arguments or perform legal research on behalf of litigants).  The Court declines to hold that Mr. Pham's settlement with Clear Screening "negates" any claim for damages against Aeva, as such a holding would disincentivize settlement of disputes.

Third, while Defendant suggests that Mr. Pham cannot demonstrate actual damages because he obtained alternative employment within 20 days of his interview with Aeva, the Court respectfully disagrees.  Mr. Pham argues in his Response that he can establish actual damages because he "was unable to earn wages that he otherwise would have earned had he been permitt[ed] to begin working at Aeva."  [Doc. 41 at 18].  Indeed, Mr. Pham confirmed at his deposition that he "did not receive wages that [he] otherwise would have earned had [he] been offered [employment] with Aeva and begun working for [Aeva]."  [Doc. 41-2 at 99:14–23].  Although Plaintiff testified that he "ha[d] not been harmed" by Aeva's actions, *see* [Doc. 40-2 at 42:3–7], which may contradict his statement, credibility determinations and resolution of conflicts in the evidence are issues reserved for the jury.  *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002) ("It is the province of the jury, and not this court, to resolve conflicts in the evidence.").  Lost income is one type of actual damages available under the FCRA, *Wentworth v.*

---

[13] Judge Domenico presided over this case at the time Defendant filed its Motion and until August 5, 2022, when the case was reassigned to the undersigned.  [Doc. 43].

*Metrodata Servs., Inc.*, No. 1:17-cv-00594, 2021 WL 516283, at *8 (W.D.N.Y. Feb. 11, 2021); *Philpot v. Microbilt Corp.*, No. 3:16-cv-382-TBR-LLK, 2018 WL 834619, at *3 (W.D. Ky. Feb. 12, 2018), and because Mr. Pham has produced evidence that of potentially lost income, the jury must assess its strength. But as Mr. Pham has already adduced evidence of actual damages, the Court is unpersuaded by Defendant's argument that Mr. Pham can produce no such evidence.[14]

### III. Willful Violation of the FCRA

Finally, Aeva argues that Plaintiff's request for statutory or punitive damages fails as a matter of law because he has presented no evidence that Aeva acted willfully or with reckless disregard in its purported FCRA violations. [Doc. 40 at 12–13]. For this reason, it asserts that it is entitled to judgment in its favor on Plaintiff's FCRA claim. [*Id.*].

"A showing of malice or evil motive is not required to prove willfulness under the [FCRA]." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). Instead, a willful violation of the FCRA is "either an intentional violation or a violation committed by an [entity] in reckless disregard of its duties under the FCRA." *Birmingham*, 633 F.3d at 1009. "Recklessness is measured by 'an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. "Willfulness under

---

[14] Notably, Defendant does not argue that Plaintiff cannot establish causation between these alleged damages and Defendant's conduct, [Doc. 40; Doc. 42], and thus, the Court assumes for purposes of the Motion for Summary Judgment that Plaintiff can do so. *Phillips*, 244 F.3d at 800 n.10.

the FCRA is generally a question of fact for the jury." *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007); *see also Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 828 (E.D. Va. 2015) ("Summary judgment is very rarely appropriate on the issue of defendant's willfulness."); *Dalton*, 257 F.3d at 418 (same).

Aeva contends that "[a]t most, Plaintiff believes, without the provision of one scintilla of corroborating evidence, that he was not hired because of an alleged felony conviction on an interim background check. However, Plaintiff's belief is simply inaccurate and wholly unsupported by the evidence – most importantly, his own testimony." [Doc. 40 at 13]. Aeva defends its conduct related to the background check as "objectively reasonable" and reiterates its position that it declined to hire Mr. Pham for reasons outside of the background check report. [*Id.* at 13–14].

In his Response, Mr. Pham directs the Court to evidence that Aeva orders a background check for "[e]very person [it] hire[s]," and has requested "hundreds" of background checks. [Doc. 41-3 at 51:4–15]. Aeva was on notice that it must comply with the FCRA when using background check reports for employment purposes. [*Id.* at 181:9–13]. But despite its regular use of background checks, Aeva does not have any internal policies or procedures regarding the use of background reports for employment purposes, [*id.* at 52:11–18, 52:23–54:1], and it does not train its employees on FCRA compliance or on how to use background check reports. [*Id.* at 16:20–17:9]. Mr. Pham argues that "[b]y failing to take any steps to avoid violating the FCRA, Aeva acted with reckless disregard of its statutory duties" under the law. [Doc. 41 at 17].

Insofar as Defendant bases its argument on its position that there is no dispute that Aeva did not rely on the background check report in revoking the conditional offer of employment, the Court has already rejected this argument, having concluded that genuine disputes of fact exist as to Aeva's underlying purpose for revoking the conditional employment offer. In the alternative,

13

Defendant asserts that Mr. Pham has presented "no evidence" that Aeva acted willfully or with reckless disregard in failing to comply with the FCRA. [Doc. 40 at 13]. The Court disagrees. Mr. Pham has produced evidence demonstrating that although Aeva was on notice of its obligation to comply with the FCRAit had no policies or procedures governing FCRA compliance and that it did not train its employees on FCRA compliance. This is sufficient to create a genuine dispute of fact as to whether Aeva acted in reckless disregard of its FCRA obligations in its interactions with Plaintiff. *See Cox v. TeleTech@Home, Inc.*, No. 1:14-cv-00993, 2015 WL 500593, at *5 (N.D. Ohio Feb. 5, 2015) (concluding that a reasonable jury could find the employer's conduct amounted to reckless disregard where it "had no systematic policy or procedure to ensure it complied with the FCRA"); *cf. Monfort v. CKCG Health Care Servs., Inc.*, No. 1:19-cv-00354, 2020 WL 9599752, at *5 (N.D. Ga. Sept. 12, 2020) (where it was undisputed that an employer did not maintain procedures for FCRA compliance and did not train its employees on the FCRA, concluding that the employer's use of a credit report for an improper purpose was "objectively unreasonable and thus willfully violative of [the FCRA]"); *compare Guthrie v. PHH Mortg. Corp.*, No. 7:20-cv-43-BO, 2022 WL 706923, at *10 (E.D.N.C. Mar. 4, 2022) (granting summary judgment in favor of the defendant where the "undisputed evidence show[ed] that [the] defendant maintained relevant policies and procedures to ensure compliance with the FCRA and that it followed those policies and procedures in th[e] case.").

Aeva asserts in its Reply that Aeva's policies, or lack thereof, "have no relation to this lawsuit" because "Plaintiff failed to establish that the FCRA requirements were even the responsibility of Aeva." [Doc. 42 at 8]. It states that "Aeva hired [Clear Screening] to run the background check," but Plaintiff "never inquired as to [which party] had the responsibility to send an adverse notice if the report were relied upon." [*Id.*]. Insofar as Defendant suggests a missing

14

evidentiary link in this case between the FCRA and Aeva's duties thereunder, the Court is unpersuaded. First, Defendant failed to raise any argument in its Motion for Summary Judgment that it was Clear Screening, and not Aeva, that had a duty to disclose the background report results to Plaintiff; this argument was undoubtedly available to Defendant at the time it filed its Motion, and its failure to raise the argument renders it waived. *White*, 862 F.3d at 1067. Furthermore, Aeva has cited no legal authority demonstrating that, by hiring a third party to conduct a background check, a user of credit reports transfers its disclosure obligations under the FCRA to that third party. *See generally* [Doc. 42]. Inadequately supported arguments need not be considered by the Court. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1218 (10th Cir. 2022). And in any event, the Court is unpersuaded by Defendant's argument. The FCRA provides that the duty to furnish a background report on a prospective employee lies with the party using the consumer report for employment purposes and intending to take an adverse action based on that report. *See* 15 U.S.C. § 1681b(3)(A) ("[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, <u>the person intending to take such adverse action shall provide</u> to the consumer to whom the report relates." (emphasis added)). By submitting evidence suggesting that Aeva purportedly rescinded Plaintiff's conditional offer based on the background report, Plaintiff has submitted sufficient evidence to establish a disclosure duty on the part of Aeva. For all of these reasons, the willfulness or recklessness of Aeva's actions must be assessed by the jury. *Edwards*, 527 F. Supp. 2d at 1210.

In sum, Mr. Pham has established genuine disputes of material fact concerning (1) whether Aeva rescinded his conditional offer of employment due to the background check results; (2) whether Mr. Pham was actually damaged by Aeva's actions; and (3) whether Aeva acted

willfully or recklessly. Summary judgment is thus not appropriate at this juncture, and Defendant's Motion will be denied.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)　Aeva Specialty Pharmacy's Motion for Summary Judgment [Doc. 40] is **DENIED**;

(2)　The Final Pretrial Conference is **RE-SET** to **February 15, 2023** at **10:00 a.m**. before Judge Nina Y. Wang; and

(3)　The Parties' Proposed Final Pretrial Order is due on or before **February 8, 2023**. The Parties shall file a copy of their proposed Order via CM/ECF and shall send a Word version to Wang_Chambers@cod.uscourts.gov.

DATED:  December 8, 2022　　　　　　　　BY THE COURT:

_____
Nina Y. Wang
United States District Judge